NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0421n.06

No. 15-6418

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 27, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| LORETTA CHOATE, | ) |
| | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| ADVANCE STORES COMPANY, INC., d/b/a | ) |
| ADVANCE AUTO PARTS, | ) |
| | ) |
| Defendant-Appellee. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

Before: SILER, GIBBONS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Advanced Stores Company fired Loretta Choate from her job as general manager of an auto-parts store. She later brought this employment discrimination suit, alleging that Advance fired her for taking medical leave and because of her gender, among other things. In a carefully reasoned opinion, the district court granted summary judgment to Advance. We affirm.

I.

In October 2011, Choate became the general manager of an Advance store in Gallatin, Tennessee. Her tenure as general manager began well enough; her supervisor, district leader Jon Mattson, rated her performance as "satisfactory" in early 2012. In September 2012, however, Mattson downgraded her performance to "challenging," citing deficiencies in several areas. The following month, Mattson put Choate on a performance-improvement plan. R. 44-3 at 3-4. Two weeks later, Choate went on medical leave for a month to seek treatment for alcoholism and

bipolar disorder. After her return, Choate complained that Mattson micromanaged her by asking her to assist him in firing one employee, and by questioning her decision to hire another. According to Choate, Mattson was "continually [finding] ways to question her authority and judgment." R. 1 at 3.

Matters worsened for Choate in December 2012. An employee, Christina Pettit, found a time-stamped receipt for alcohol in one of Advance's commercial trucks and reported the receipt to Mattson. Another employee, Shelley Robinson, was using the truck at the time stamped on the receipt. At Mattson's direction, Choate questioned Robinson, who denied buying alcohol during work hours. Mattson then told Choate to suspend Robinson for a few days while they continued to investigate. R. 44-1 at 9.

Soon after Robinson returned to work, Pettit complained to Mattson that Robinson was harassing her. R. 44-3 at 9. Mattson and a human-resources manager for Advance decided that Robinson should be transferred to a different store. *Id.* Choate objected, emailing the human-resources manager to complain that the incident had "humiliated" Robinson and created "a lot of drama" in the store. R. 44-2 at 1-2. According to Mattson, Choate fixated on Robinson's transfer, ignoring the Gallatin store's still-deteriorating performance. R. 44-3 at 15.

On January 8, 2013, Choate called Advance's human-resources hotline to complain that employees had created "drama" and a "hostile work environment" after Robinson's transfer. Choate also said that she had been treated unfairly when Mattson directed her to suspend and then reinstate Robinson, and when Mattson blamed Choate for the store's "drama." R. 44-2 at 49-50. Human Resources concluded that Choate's complaints were meritless.

The morning of January 15, 2013, Choate told Mattson that she would be late to work because she needed to buy a car battery. While Choate was out, she received a call from

Robinson, who sounded suicidal. R. 44-1 at 18. Choate went to Robinson's house and remained there all day. Choate did not tell Mattson that she would be skipping work, but she did call several employees in the store over the course of the day. R. 44-1 at 19. Advance requires an employee to notify her supervisor if she will be absent. R. 44-2 at 43. When Mattson called Choate at the end of the day, she said that her phone had died, and that she had been with Robinson all day. R. 44-3 at 11.

Mattson fired Choate the next day, writing that she had badly mismanaged the situation surrounding Robinson. According to Mattson, Choate allowed Robinson to retaliate against Pettit. R. 44-2 at 3. Choate spent too much time focused on Robinson rather than her store, ultimately abandoning the store to stay with Robinson. *Id.* Mattson concluded that Choate's actions "had a severely detrimental effect on the store," "represent[ed] gross misconduct," and violated Advance's code of ethics. *Id.* Choate signed the report, but stated that she did not agree with all of its conclusions. She also said she thought she was being fired because she had contacted Human Resources. *Id.*

Choate sued Advance, alleging that the store violated the Tennessee Human Rights Act, the Americans with Disabilities Act, and Title VII of the Civil Rights Act. The district court granted summary judgment to Advance. This appeal followed.

II.

We review de novo the district court's grant of summary judgment. *Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013).

The Americans with Disabilities Act forbids employment discrimination on the basis of disability. 42 U.S.C.A. § 12112(a). Under the *McDonnell Douglas* burden-shifting framework, Choate bears the initial burden of establishing a prima facie case of discrimination. *Sjostrand v.*

*Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). The burden then shifts to Advance to articulate a legitimate, nondiscriminatory reason for firing her. *Id.* Choate must then present evidence from which a jury could find that Advance's proffered reason is merely pretext. *Id.*

The question of pretext controls here. Advance offered several nondiscriminatory reasons for firing Choate. First, her performance had declined before she went on leave, and she did not follow her performance-improvement plan after her return. Second, she mishandled the Robinson investigation and transfer. Third, Choate did nothing when Robinson harassed Pettit. Finally, Choate did not tell Mattson that she would not be coming to work at all on the day she stayed with Robinson.

Choate asserts that Advance's reasons for firing her do not have any factual basis. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016). But Choate lacks evidence to back up her assertion. She concedes that her store was performing poorly; she contends only that she needed more time to correct the problem. That contention is undermined, however, by her complete neglect of her performance-improvement plan in the time that she did have. Choate also concedes that she did not tell Mattson that she was not coming to work; she contends only that she had already told Mattson that she would be late, which, in her view, was good enough. But Advance's employee handbook differentiates tardiness from absence. R. 44-2 at 43-44. Choate has no evidence that Advance cited her poor performance and unreported absence as pretexts for discrimination. Her disability-discrimination claim therefore fails.

Choate also alleges that Advance discriminated against her because of her gender, in violation of the Tennessee Human Rights Act and Title VII of the Civil Rights Act. The scope of the Tennessee Act is "coextensive with federal law." *Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999). Hence we apply the same standard to both statutes. *See*

*Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 673 (6th Cir. 2008). To establish a prima facie case of gender discrimination, Choate must show, among other things, that she was treated less favorably than a male employee who was "similarly situated" to her " in all relevant respects." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). Choate seeks to compare her situation to that of a male general manager named "Alex." But she offers no evidence about Alex—much less that she and Alex are similarly situated. Her gender-discrimination claim therefore fails.

Finally, Choate alleges that Advance retaliated against her, in violation of the Tennessee Human Rights Act and Title VII, after she complained about discrimination. To prevail on a retaliation claim, Choate must show, among other things, that she complained about discrimination. *See Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008); *see also* 42 U.S.C.A. § 2000e-3(a); Tenn. Code Ann. § 4-21-301 (a)(1). Choate says she did that when she called Advance's human-resources hotline to complain about Robinson's transfer. During that call, Choate said that employees were "creating "drama" and "a hostile work environment." R. 44-2 at 49-50. But she never complained that Mattson or anyone else in management discriminated against her. She therefore cannot make out a prima facie case of unlawful retaliation.

\*　　\*　　\*

The district court's judgment is affirmed.