NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1101n.06

No. 10-2126

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Oct 25, 2012***

DEBORAH S. HUNT, Clerk

CLIFFORD N. OWHOR,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　**Plaintiff-Appellee,**　　　　　　　　　)　　　　**ON APPEAL** FROM THE
　　　　　　　　　　　　　　　　　　　　　　)　　　　UNITED STATES DISTRICT
v.　　　　　　　　　　　　　　　　　　　　　)　　　　COURT FOR THE EASTERN
　　　　　　　　　　　　　　　　　　　　　　)　　　　DISTRICT OF MICHIGAN
　　　　　　　　　　　　　　　　　　　　　　)
ST. JOHN HEALTH-PROVIDENCE　　　　　　)　　　　**O P I N I O N**
HOSPITAL, et al.,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　**Defendants-Appellants.**　　　　　　　)

BEFORE:  BOGGS and McKEAGUE, Circuit Judges; and WATSON, District Judge.[*]

　　　　**MICHAEL H. WATSON, District Judge.**  Plaintiff-Appellant Clifford Owhor ("Owhor") brought an employment discrimination action against Defendant-Appellee Providence Hospital and Medical Centers, Inc. ("Providence Hospital") after it terminated his employment.  The district court granted Defendant summary judgment on Owhor's race and national origin discrimination and hostile work environment claims under Title VII and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), as well as Owhor's defamation claim.  The district court also denied Owhor leave to amend to add a retaliation claim under the ELCRA.  Owhor appeals the district court's judgment. For the following reasons, we AFFIRM.

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. FACTS

Owhor, a native of Nigeria and a United States citizen since 1993, worked as a Physician's Assistant ("PA") at Providence Hospital from July 2007 to March 2008. Owhor was supervised jointly by Nora Bass ("Bass"), the floor supervisor, and Linda Eckstein ("Eckstein"), the operating room supervisor. Vicki Jacobs ("Jacobs") was the operating room manager and reported to Eckstein.

In or about September 2007, Dr. Lawrence Cheung, the Chief of Surgery at Providence Hospital, began to treat Owhor in what Owhor perceived to be an unfair manner. Owhor avers Dr. Cheung told Owhor he could not eat food that pharmaceutical representatives brought to the hospital, and when Dr. Cheung saw Owhor eating the food, Dr. Cheung slammed the door to his office.

On November 18, 2007, Dr. Cheung made a presentation about the roles of mid-level providers such as PAs. Owhor testified that when Owhor asked a question to clarify Dr. Cheung's statements, Dr. Cheung responded "I hate you in scrubs! I hate you in scrubs! I hate you in scrubs!" Dr. Cheung also forbade Owhor from entering the surgeons' and the attending doctors' lounges and told Owhor that he would be fired if he went into those locations. Following this meeting, which Bass attended, Bass asked Dr. Cheung to leave the floor management to her and he agreed.

At a separate meeting, Dr. Cheung told Owhor he should perform 80% floor work and 20% surgery work. Owhor was never disciplined for violating any of Dr. Cheung's conditions.

Later in November 2007, Owhor met with Mary Legette ("Legette"), a human resources specialist, and reported his discomfort with Dr. Cheung's behavior at the November 2007 meeting. Owhor told her he was not sure if Dr. Cheung yelled at him because he did like him or because "he is black or both." Legette testified that she believed Owhor was complaining about race

discrimination but that he did not want her to raise the issue with anyone else. Legette did, however, share Owhor's concerns with Bass and Theresa Bologna, the director of Worklife Services.

On January 18, 2008, Owhor had his six-month performance review with Eckstein and Bass. Eckstein and Bass gave Owhor an overall satisfactory rating but instructed him to come in at 7:00 a.m.—not 6:00 a.m. to go on rounds with residents—and to check in with the "board runner" each morning to determine operating room needs and get assignments. Eckstein and Bass also told Owhor to stay until 3:00 p.m. instead of leaving between 2:00 and 2:30 p.m. Owhor told Eckstein and Bass that he felt Eckstein, Bass, and Dr. Cheung were discriminating against him.

Also on January 18, 2008, Taneisha Franklin ("Franklin"), another African-American PA, resigned from Providence Hospital because Bass and Eckstein accused her of being angry every day, sleeping in the lounge, and neglecting her duties. Franklin felt that these accusations were motivated by racial animus.

In early March 2008, Eckstein received a verbal report from surgical technician Noreen Dillion ("Dillion") that Owhor appeared to be sleeping during surgery on February 27, 2008. Dillion testified she observed Owhor sleeping in five to seven surgeries but did not report it until the fifth or sixth time.

On March 11, 2008, Lorraine Taube ("Taube"), the circulating nurse, told the charge nurse that she needed Jacobs in the operating room because Owhor was sleeping while he assisted Dr. Michael Mendelow in an orthopedic surgery on a pediatric patient. Jacobs entered the room and

 observed Owhor holding retractors which were inside the patient with his eyes closed and the upper half of his body swaying back and forth while he nodded.[1]

In addition to Taube and Jacobs, at least four other medical professionals were with Owhor during the surgery on March 11, 2008. Grant O'Dell, a Certified Nurse Anesthetist, observed Owhor with his eyes closed. Denise Fryer, a Surgical Technologist, testified that she observed Owhor sleeping in surgery with Dr. Mendelow twice—including the day in question—and was the one who asked Taube to contact Jacobs. Tonya Howard, a Registered Nurse, observed Owhor jerking his head and heard him snoring a little, and described it as sleeping. Dr. Mendelow stated that he was focused on the surgery and did not observe or otherwise sense that Owhor was sleeping.

Owhor denies sleeping during the surgery. Owhor testified someone called out his name during surgery and he asked why they were calling him. Owhor recalls someone telling him to take a break, and to step down and backwards.

Jacobs reported the incident to Eckstein who alerted Worklife Services, Providence Hospital's human resources department. Colleen Kretzchmar, a Worklife Services employee, told Jacobs to send Owhor to Occupational Health for an examination to determine whether he was having a medical emergency. Occupational Health conducted a physical examination and a drug and alcohol screen. Owhor's physical examination was normal and the initial drug tests came back negative. Owhor was sent home.

---

[1] Jacobs could not remember whether Owhor was standing on a stool at the time but Owhor testified that he was.

On March 18, 2008, Dr. Vosburgh, the Corporate Medical Director, concluded that Owhor was medically fit to return to work. Bass told Owhor that he could not return to work yet because an investigation into the March 11 incident was still pending. On March 25, 2008, Owhor was terminated for violating Providence Hospital's Policy Guideline 515, section 15(x), which prohibits "sleeping or the appearance of sleeping during work hours, or sleeping or the appearance of sleeping in unauthorized areas at any time, including meal periods or rest breaks." Dr. Cheung played no part in the decision to discharge Owhor.

## II. DISCUSSION

Owhor appeals the district court's grant of summary judgment for Providence Hospital on Owhor's discrimination and hostile work environment claims and Owhor's defamation claim. Owhor also appeals the district court's denial of leave to amend to add a retaliation claim under the ELCRA.

### A. Summary Judgment on Discrimination Claims

We review a grant of summary judgment *de novo*. *Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir. 2012).

To establish a prima facie case of employment discrimination a plaintiff must show: (1) he is a member of a protected class, (2) he was qualified for the job, (3) he suffered an adverse employment decision, and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Arendale v. City of Memphis*, 519 F.3d

587, 603 (6th Cir. 2008).[2] If a plaintiff sets forth a prima facie case of discrimination, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. *Id.* If the employer meets this burden, the plaintiff must show that the reasons offered by the employer were a pretext for discrimination. *Id.*

Even assuming Owhor met his prima facie case, Owhor has failed to demonstrate pretext. A plaintiff can demonstrate pretext by showing the reason offered by the employer: (1) had no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Romans v. Mich. Dept. of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012). Owhor argues that he was not actually sleeping and, therefore, Providence Hospital's stated reason had no basis in fact.

A defendant can overcome a plaintiff's accusation of prextext if it is "able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* Owhor argues, and is correct, that this Circuit's test is different than the Seventh Circuit's "bare honest belief rule." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006). In this Circuit, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

Providence Hospital undertook a reasonable investigation before terminating Owhor for sleeping or the appearance of sleeping. Worklife Services made the recommendation for termination

---

[2] The district court held the only adverse employment action Owhor demonstrated was his termination. Owhor has not appealed this determination.

based on the statements of Taube, who was present in surgery with Owhor, and Jacobs, the operating

room manager. Bass testified that the decision to terminate was based more generally on an

investigation by Eckstein that included conversations with everyone present. Eckstein testified that

she spoke with Jacbos and Owhor about the incident and Jacobs got statements from everyone in the

room.[3] In addition, immediately after the incident, Owhor was tested to determine if he was having

a medical emergency. This Circuit does "not require that the decisional process used by the

employer be optimal or that it left no stone unturned." *Wright*, 455 F.3d at 708. Based on the

testimony of the employees who witnessed Owhor during the surgery and the lack of medical

explanation for the occurrence, Providence Hospital made a reasonably informed and considered

decision that termination was appropriate. The district court was correct to grant Providence

Hospital summary judgment on Owhor's discrimination claims.

**B. Denial of Leave to Amend**

Owhor's arguments regarding the district court's denial of leave to amend are moot. Even

if Owhor were allowed to add the claims, they would fail because we hold Providence Hospital made

a reasonably informed and considered decision before terminating Owhor. To make a prima facie

case under Michigan's ELCRA for retaliation a plaintiff must show: (1) he engaged in protected

activity, (2) this was known to the defendant, (3) defendant took an employment action adverse to

the plaintiff, and (4) his participation in protected activity was a "significant factor" in the

---

[3] The portions of Jacobs's deposition provided to the district court on summary judgment do not contain a discussion of any investigation Jacobs may have done. Jacobs testified that she did not write anything or have a file on the incident, but this does not, as Owhor argues, prove that no investigation took place.

employer's adverse employment action. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 n.2 (6th Cir. 2008) (citing *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001), which held there is a heightened causation standard under Michigan law). The same burden shifting framework applies in the retaliation context as in the discrimination context. The Sixth Circuit's honest-belief rule also applies. *Bhama v. Mercy Mem'l Hosp. Corp.*, 416 F. App'x 542, 553 (6th Cir. 2011). Because Providence Hospital made a reasonably informed decision to terminate Owhor based on his sleeping or appearance of sleeping, we affirm the district court's denial of leave to amend.

## C. Summary Judgment on Hostile Work Environment Claims

Owhor argues the district court erred in dismissing his hostile work environment claims because the court improperly required overtly racial statements and discounted the testimony of Tanesha Franklin. Providence Hospital responds the district court properly concluded the conduct of Owhor's co-workers did not constitute severe and pervasive harassment.

To survive a motion for summary judgment on a hostile work environment claim, a plaintiff must establish: (1) the plaintiff was a member of a protected class, (2) the plaintiff was subjected to unwelcome harassment based on race or national origin, (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment, and (4) there exists some basis for liability on the part of the employer. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). The third element requires a plaintiff to show that the workplace was permeated with harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This requirement has both a subjective and an objective element. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008).

Owhor is correct that, under the second prong, harassment need not be overtly racist to be based on race. *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011). Harassment is based on race when it would not have occurred but for the plaintiff's race. *Id.* However, the district court merely noted that there were no explicit mentions of race by Bass, Eckstein, or Dr. Cheung. Its holding hinged on the fact that, under the third prong, Owhor's complaints were mere workplace indignities and not severe or pervasive enough to constitute a hostile work environment.

The district court was correct in concluding Owhor's complaints did not amount to severe or pervasive harassment. According to Owhor, he was yelled at not to wear scrubs, not to go into certain areas, and not to eat food brought in by the pharmaceutical representatives; told to arrive on time instead of an hour early, to check in upon arrival, and not to leave early; and forced to undergo a physical when accused of sleeping in surgery. Owhor was never punished for disobeying any of Dr. Cheung's directions. Taken together, these accusations do not demonstrate an objectively intimidating, hostile, or offensive environment.

In addition, the allegations of discrimination by Tanesha Franklin do not change the analysis. While harassment directed at co-workers may be relevant to a plaintiff's hostile work environment claim, *see Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999), the complaints Franklin listed were not severe. Franklin's opinion that the environment was discriminatory does not alter that fact. Accordingly, the district court is affirmed.

## D. Summary Judgment on Defamation Claim

Owhor's final claim is one for common law defamation. Owhor alleges that someone at Providence Hospital told Oakwood Hospital, a potential employer, that Owhor was fired for poor performance.

Owhor testified that after his termination from Providence Hospital, Oakwood Hospital offered Owhor employment as a PA but rescinded the offer two weeks later. Michael Waines ("Waines") was Owhor's contact at Oakwood Hospital. Owhor testified that Waines told Owhor that someone at Providence Hospital's Worklife Services said Owhor was fired because of poor job performance. Waines testified that he told Owhor, "[i]t was recommended to me that we not hire you because you left your previous place of employment on less than favorable circumstances." Waines avers he based this statement on a conversation with his supervisor, Matthew Jakovac. Jakovac testified that he told Waines not to hire Owhor because of a conversation with now-deceased Sandy Wolford, an employee of Oakwood hospital and former employee at Providence Hospital. According to Jakovac, Wolford told Jakovac she would not recommend Owhor for employment but did not elaborate further.

The elements of a defamation claim under Michigan law are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005).

The district court granted Providence Hospital summary judgment on Owhor's defamation claim because it determined Wolford's statement is hearsay and because Owhor could not establish that Providence Hospital made any false representations about him. We, however, may affirm on any grounds supported by the record. *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007).

Owhor has not raised a genuine issue of material fact on his defamation claim because he points to no specific, admissible statement by a Providence Hospital employee that was defamatory. Wolford was not a Providence Hospital employee at the time she spoke to Jackovac about Owhor. Moreover, Wolford's statement is not evidence of defamation because there is no way to infer Wolford's comment was based on information from Providence Hospital employees. Jakovac testified only that Wolford said she would not recommend Owhor and that she did not give any reason.

Waines's statement to Owhor that someone at Providence Hospital told Waines Owhor was let go for poor performance is inadmissable hearsay. Owhor offers Waines's statement for the truth of the matter asserted—that someone at Providence Hospital really did say Owhor was let go for poor performance. Fed. R. Evid. 801(c). The only exception Owhor argues applies is Federal Rule of Evidence 803(21) which provides an exception for statements regarding a "person's character among associates or in the community." Waines's statement was not, however, a statement about Owhor's general reputation. The statement was about what one person told him about a specific event—Owhor's termination from Providence Hospital. Accordingly, the exception does not apply and Waines's statement is inadmissable hearsay which cannot be considered on a motion for summary judgment. *Sperle v. Mich. Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002).

Owhor has not raised a genuine issue of material fact on his defamation claim, and the district court

is affirmed.

### III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court in all respects.