**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0011n.06

**No. 13-5345**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PERNELL SAULSBERRY, | ) | |
| | ) | **FILED**<br>Jan 10, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  BOGGS and SUTTON, Circuit Judges, and CLELAND, District Judge.[*]

CLELAND, District Judge.  Plaintiff-Appellant Pernell Saulsberry ("Saulsberry") sued his employer, Defendant-Appellee Federal Express Corp. ("FedEx"), alleging employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family Medical Leave Act ("FMLA"), and the Tennessee Human Rights Act ("THRA").  Saulsberry appeals the district court's grant of summary judgment to FedEx.  We **AFFIRM.**

**I.  BACKGROUND**

Saulsberry is a part-time handler at FedEx. (Pg ID 90.)  As a handler, Saulsberry's job duties include loading and unloading packages, documents, and dangerous goods from aircraft containers and FedEx vehicles.  (*Id.*)  Saulsberry claims that there are two kinds of package handlers in the

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

FedEx universe, "DOT" and "Non-DOT." Although Saulsberry asserts that he was of the Non-DOT variety, the magistrate judge found no evidence of it.[1] FedEx contends that Saulsberry is a handler (DOT). In addition to those listed above, a handler (DOT)'s duties may include operation of a vehicle. (Pg ID 179.) Specifically:

> On an emergency basis, [a handler (DOT)] performs pickup/delivery of packages. This function cannot comprise the majority of time worked on any given day. In addition, [a handler (DOT)] may occasionally operate non-articulated vehicles, but this cannot be the primary focus of the job, nor should it comprise the majority of time worked on any given day.

(*Id.*) Pursuant to federal regulations, a handler (DOT) is required to pass a medical examination. (*Id.*) The FedEx system lists Saulsberry as a handler (DOT), he admits that he has driven a FedEx vehicle off of FedEx property, and he acknowledges that he has submitted to the medical examinations required of a handler (DOT). (Pg ID 116–17.)

The FedEx "Acceptable Conduct Policy" states that a violation of corporate regulations, including failure to wear a seatbelt, is a misconduct issue that may result in severe disciplinary action, including termination. (Pg ID 182.) On June 7, 2010, Saulsberry received a warning letter for a "serious safety violation" for operating a forklift without wearing his seatbelt:

> In accordance with policy, this warning letter will remain active for twelve months; therefore, a Job Change Application (JCA) may not be submitted during this time frame. In addition, three notifications of deficiency (i.e., any combination of warning letters and/or performance reminders) received within a twelve month period may result in termination.

---

[1] The magistrate judge's report and recommendation notes, "plaintiff has not provided any evidence that FedEx has a job classification of Handler NON DOT. Thus, the Court has no evidence that such a position even exists within FedEx's corporate structure." (Pg ID 339.)

(Pg ID 180.) Around this time, two other FedEx employees, Chuck Murrell and William Holland, were involved in car accidents. (Pg ID 263.) Each received written counseling pursuant to FedEx's "Vehicle Accidents/Occurrences Policy." (Pg ID 91–92).

On December 22, 2010, Saulsberry went to the emergency room because he felt dizzy. (Pg ID 130–32.) He was diagnosed with a urinary-tract infection and vertigo but was released to work with no restrictions on December 27, 2010. (Pg ID 128, 130–32.) Consequently, from December 22, 2010, through December 26, 2010, Saulsberry did not work. (Pg ID 132–33.) He took another unscheduled absence from work on January 17, 2011, due to vertigo. (Pg ID 134.) According to FedEx's attendance policy, "[p]reauthorized or scheduled medical absences or leaves are not calculated into the employee's attendance rate." (Pg ID 208–12.) In contrast, "all unscheduled absences not protected by the [FMLA] or by state law are counted in any evaluation of an employee's attendance record." (Pg ID 206.) On January 24, 2011, Saulsberry received a performance reminder for unsatisfactory attendance because his attendance rate of 94.6% was below the minimum required rate of 96.9%. (Pg ID 132–33.) The letter listed fourteen absences, five of which included unscheduled absences due to vertigo (December 22, 2010–December 24, 2010, January 17, 2010, and January 20, 2010.) (Pg ID 202.) The letter stated, "since you received a warning letter for a Serious Safety Violation on June 7, 2010, this is your second formal notification of deficiency in the past 12 months." (*Id.*) The letter also instructed him to return on January 26, 2011, "with either a detailed Personal Performance Agreement or a letter of resignation." (*Id.*) Saulsberry chose to return with a Performance Agreement and, consequently, to remain a FedEx employee. (Pg ID 204.)

On January 20, 2011, a few days before receiving the performance reminder, Saulsberry requested FMLA leave. (Pg ID 136.) FedEx denied the request because Saulsberry "[had] not met the FMLA's 1,250-hours-worked-requirement." (Pg ID 197) Also on January 20, 2011, per his manager's instructions, Saulsberry met with the FedEx doctor, who disqualified him from driving FedEx vehicles due to his vertigo. (Pg ID 135–36.) FedEx policy required Saulsberry to be free of vertigo symptoms for sixty days before he could be re-certified to drive. (Pg ID 93.) Consequently, FedEx placed Saulsberry on a Temporary Return to Work ("TRW") assignment which mandated that he "work no more than 20 hrs per week with temporary restrictions of no driving in a DOT capacity." (Pg ID 192.) On March 27, 2011, FedEx cleared Saulsberry to resume driving duties. (Pg ID 215.)

Plaintiff sued FedEx, alleging employment discrimination under Title VII, the FMLA, and the THRA. (Pg ID 5–12.) Specifically, he alleged that he was subjected to a hostile work environment, experienced racial discrimination, and was not permitted to take FMLA leave. (*Id.*) In a short-form order, the district judge agreed with and adopted in full the magistrate judge's report and recommendation granting summary judgment in favor of FedEx on all claims. (Pg ID 360.)

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*. *United Steelworkers v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). Under Federal Rule of Civil Procedure 56, summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th

Cir. 2008). The moving party "bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Id.* at 389-90 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where the moving party carries its initial burden, the nonmoving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

## III. ANALYSIS

### A. Additional Discovery

The district court's denial of additional discovery under Rule 56(d) is reviewed for an abuse of discretion. *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 510 (6th Cir. 2012).

The district court did not abuse its discretion in denying Saulsberry's request for additional time to conduct discovery. Under Rule 56(d), a nonmovant claiming that a motion for summary judgment is premature must "[show] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).[2] "Mere speculation that there is some relevant evidence not yet discovered will never suffice." 11 Moore, et al., *Moore's Federal Practice* § 56.102[2] (2012). Saulsberry's attorney's declaration stated that Saulsberry "wishe[d] to take two (2) depositions of key fact witnesses that are essential to the prosecution of his case." (Pg ID 302.) Saulsberry's declaration did not specify what he sought to obtain from further

---

[2] Saulsberry's declaration mis-cites his 56(d) request as pursuant to Rule 56(f). "The provisions formerly contained in Fed. R. Civ. P. 56(f) have been moved to Fed. R. Civ. P. 56(d). This change has no substantive effect." *Alspaugh v. McConnell*, 643 F.3d 162, 167 n.1 (6th Cir. 2011).

discovery let alone the identity of the witnesses he sought to depose. On appeal, Saulsberry states only that he was "greatly prejudiced" and that, "[had he] been allowed to take the necessary discovery, it is probable that the Motion for Summary Judgment would have been denied." (Appellant Br. at 16.) Saulsberry's "general and conclusory statements . . . regarding the need for more discovery" do not demonstrate that the district court's denial of Saulsberry's request for additional discovery was an abuse of discretion. *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 334 (6th Cir. 2010) (quotations and citations omitted).

### B. Saulsberry's Status as a Handler (DOT)

The district court did not err by finding that Saulsberry was a handler (DOT). Saulsberry argues that he is a handler (Non-DOT) because he never signed an offer letter for the position of handler (DOT). (Pg ID 327.) In his discussion of the job classification, Saulsberry cites the record just once, and that citation is irrelevant as it pertains to FedEx's system of recording employees' hours. Instead, Saulsberry argues that, "just because it is in the FedEx system does not make it true," that "Plaintiff testified in his deposition and has maintained that he is a NON DOT handler," and that "[e]vidence in the record that [sic] suggests that Fed[E]x will not let employees take a job without signing an 'offer letter.'" (Appellant's Br. at 17–18.) In fact, the record reveals that the FedEx system lists Saulsberry as a handler (DOT), Saulsberry has periodically driven a FedEx vehicle, and Saulsberry submitted to medical examinations as part of his handler duties. (Pg ID 116–17.) Saulsberry even testified that he was not aware of any FedEx policy that required him to sign an offer letter. (Pg ID 322.) Saulsberry's conclusory statements provide no indication that the

6

district court clearly erred, and he has not pointed to any record evidence creating a genuine issue

of material fact.

### C. Exclusion of the "Federal Express Corporation Employee Monthly Trend Report"

"Whether certain evidence constitutes hearsay . . . is a conclusion of law that we review de

novo." *United States v. Rodriguez–Lopez,* 565 F.3d 312, 314 (6th Cir. 2009).

FedEx denied Saulsberry's request for FMLA leave because he "[had] not met the FMLA's

1,250-hours-worked-requirement" and was therefore "NOT eligible for FMLA leave." (Pg ID 197.)

To support its motion for summary judgment, FedEx submitted Saulsberry's "Notice of Eligibility

and Rights & Responsibilities" form, (Pg ID 197–99), and a declaration of FedEx's human-capital-

management advisor, Shelly Catron (Pg ID 213–15). Catron stated that, "[a]ccording to FedEx's

records, Mr. Saulsberry worked 1,136 hours during the twelve months preceding the requested

leave." (Pg ID 214.) In attempting to dispute this fact, Saulsberry submitted an "Exhibit FMLA

Hours," a "Federal Express Corporation Employee Monthly Trend Report" which lists "HR PAID

TOT" as "1257.29." (Pg ID 290–91.) The district court excluded Saulsberry's "Exhibit FMLA

Hours" as hearsay. (Pg ID 342.)

Even if Saulsberry's "Exhibit FMLA Hours" were to be admitted, however, Saulsberry could

not maintain an FMLA claim because he is not an "eligible employee." *Humenny v. Genex Corp.,

Inc.,* 390 F.3d 901, 905-6 (6th Cir. 2004).

Under the FMLA, "eligible employees" are guaranteed twelve weeks of unpaid leave during

any twelve-month period for certain medical events. *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625,

629 (6th Cir. 2008). An "eligible employee," is defined as "an employee who has been employed

. . . for at least 12 months by the employer with respect to whom leave is requested . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

To qualify as an "eligible employee" under the FMLA, the employee must have actually worked 1,250 hours. Although the FMLA does not define the term "hours of service," section 2611(2)(C) directs courts to the Fair Labor Standards Act ('FLSA'). 29 U.S.C. § 2611(2)(C); *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007) ("In calculating the 'hours of service,' the Act [FMLA] incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207."). However, the FLSA also does not define the term "hours of service." Nonetheless, the FMLA's implementing regulations clarify that "[t]he determining factor is the *number of hours an employee has worked* for the employer within the meaning of the FLSA . . . .[A]ny accurate accounting of *actual hours worked* under FLSA's principles may be used." 29 C.F.R. § 825.110(c)(1) (emphasis added). Moreover, this court has cited *Plumley v. Southern Container, Inc.*, 303 F.3d 364, 372 (1st Cir. 2002) for the conclusion that "hours of service," "include only those hours actually worked in the service and at the gain of the employer." *Mutchler*, 485 F.3d at 858 (holding that extra unworked hours for which a hospital employee was compensated based on her willingness to work weekend shifts did not constitute "hours of service" under the FMLA and thus the employee was not eligible for FMLA leave). Thus, to qualify as an "eligible employee" under the FMLA, Saulsberry must prove that he actually worked 1,250 hours.

Citing his proffered "Exhibit FMLA Hours," Saulsberry argues that he "put in 1257 hours of service within one year," and thus "[i]t appears that he did have the requisite hours." (Appellant's Br. at 14.) However, the "Federal Express Corporation Employee Monthly Trend Report" upon which Saulsberry relies lists "HR PAID TOT" as "1257.29" and on the line below, "HR WKD TOT" as "1109.29." (Pg ID 290–91.) Saulsberry's testimony regarding his proffered exhibit further corroborates that he did not actually *work* 1,257 hours, but that he was *paid* for 1,257 hours:

> Q: Do you recognize that the Hours Paid Total includes the hours that you were paid for vacation and for holidays?
> A: Yes.
> Q: So, you didn't work on vacations and holidays that you were paid on. Correct?
> A: Yes.
> Q: So, when you make this statement that you believe that the wrong hours were being used, you are not saying that the wrong number of hours are recorded. Correct?
> A: Right.
> Q: You're just saying that they are using the wrong category?
> A: Yes.

(Pg ID 332.)

Saulsberry does not dispute FedEx's records. FedEx maintains that Saulsberry worked 1,136 hours during the 12 months preceding his requested FMLA leave. (Pg ID 214.) Saulsberry testified that he punched a time card at the beginning and end of his shifts in accordance with FedEx policy. (Pg ID 120.) Although Saulsberry testified that he questioned the accuracy of FedEx's daily time cards, when asked "do you believe that FedEx keeps an accurate accounting and record of your hours worked?" he responded "Yes." (Pg ID 122.) Thus, Saulsberry does not dispute FedEx's record that he worked only 1,136 hours.

9

### D. Discrimination Under Title VII and the THRA

To establish a *prima facie* case of Title VII race discrimination, an employee must prove that he: 1) is a member of a protected class, 2) is qualified for the job, 3) suffered an adverse employment action, and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Newman v. Fed. Exp. Corp.* 266 F.3d 401, 406 (6th Cir. 2001). The same analysis applies to Saulsberry's claims under the THRA. *See Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 757 (6th Cir. 2012) ("Tennessee courts look to federal cases applying federal anti-discrimination statutes as the baseline for interpreting and applying the THRA."). The district court concluded that Saulsberry's Title VII and THRA discrimination claims failed because he did not suffer an adverse employment action. On appeal, Saulsberry argues that placement on probation, denial of his FMLA request, and "the culmination of the warning letter, performance reminder, temporary return to work assignment and denial of FMLA leave" each constitute adverse employment actions. (Appellant's Br. at 21–22.)

We need not address whether Saulsberry's probation constituted an adverse employment action because he cannot prove that he was treated differently than similarly situated non-protected employees. "In the disciplinary context . . . to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of *comparable seriousness*." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (internal quotation marks omitted). In his response, Saulsberry argued that white co-workers Chuck Murrell and William Holland were treated more favorably than he was because they were only counseled for vehicle accidents, whereas Saulsberry received a warning letter for his safety violation. (Pg ID 263.)

Saulsberry did not engage in conduct comparably serious to that of Murrell and Holland[3] and thus he has not compared himself to similarly situated employees. Saulsberry failed to wear his seatbelt while in a forklift; Murrell and Holland were involved in vehicular accidents. At first glance, their differing punishments for violations of company policy may seem incongruous—both involved motorized vehicles—but the court "cannot sit as a super-personnel department . . . ." *Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995). (quotations and citations omitted). Put simply, "it is inappropriate for the judiciary to substitute its judgment for that of management." *Id.* Here, FedEx disciplined Saulsberry for violating a different company policy from the policy that Murell and Holand violated. Saulsberry received a "serious safety violation" pursuant to FedEx's "Acceptable Conduct Policy," (Pg ID 182); Murrell and Holland each received a written counseling pursuant to FedEx's "Vehicle Accidents/Occurrences Policy," (Pg ID 91–92).[4] FedEx "has the discretion to assign different punishments to violations of different company policies." *Letner v. Wal-Mart Disc. Dep't Store*, 172 F.3d 873 (6th Cir. 1999) (table opinion) (per curiam). Because he did not engage in the same conduct as his proposed comparators, Murrell and Holland, Saulsberry cannot establish that he was treated differently than similarly situated non-protected employees.

In the district court, Saulsberry did not raise his two remaining arguments—that denial of his FMLA request and the "the culmination of the warning letter, performance reminder, temporary return to work assignment and denial of FMLA leave" constituted adverse employment actions. "In

---

[3] Saulsberry referred to William Holland as "Williams" in his response. (Pg ID 263–64.)

[4] Interestingly, Holland later committed a safety violation and, like Saulsberry, received a "serious safety violation" warning letter pursuant to FedEx's "Acceptable Conduct Policy." (Pg ID 92.)

general, this court will not review issues raised for the first time on appeal. Our function is to review

the case presented to the district court, rather than a better case fashioned after a district court's

unfavorable order.*" DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922

(6th Cir. 2006) (citation omitted). Accordingly, we need not address these arguments.

### E. Hostile Work Environment

To establish a *prima facie* hostile work environment claim on the basis of race under Title

VII, "a plaintiff must demonstrate that (1) [he] was a member of a protected class; (2) [he] was

subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment

unreasonably interfered with [his] work performance by creating an intimidating, hostile, or

offensive work environment; and (5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d

502, 515 (6th Cir. 2009). Title VII's protection against a hostile work environment applies when

"the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations and

citations omitted.)

Saulsberry claims that "harassment came in the form of FedEx putting him on TRW without

his knowledge and sticking him in a more exhaustive job despite his physical diagnosis" because

"other, non-minority employees . . . [were] on TRW and worked in the courier check-in room, a

much less strenuous job." (Appellant's Br. at 24.) To support this allegation Saulsberry cited his

August 27, 2012, declaration. (Pg ID 286–89.) However, at his deposition on January 26, 2012,

Saulsberry admitted that he was unaware of any non-black employee that received better treatment than he did with respect to his TRW assignment. (Pg ID 176.) Saulsberry's contradictory post-deposition declaration can be disregarded because "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).

Moreover, Saulsberry provides no evidence that his placement on TRW was racially motivated. "[H]arassment need not be overtly racist to be based on race." *Owhor v. St. John Health-Providence Hosp.* 503 F. App'x 307, 312 (6th Cir. 2012). "Harassment is based on race when it would not have occurred but for the plaintiff's race." *Id.* Here, Saulsberry was placed on TRW due to his vertigo. (Pg ID 93). As the magistrate judge noted, Saulsberry's TRW status "allow[ed] him to maintain his income within his medical restrictions," quite the opposite of harassment. (Pg ID 353.) Saulsberry provides no evidence to suggest that his placement on TRW was racially motivated.

## IV. CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.